UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 08-1160 (ESH/AK) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff Lockheed Martin Corporation's Motion to Compel Production of Rule 30(b) (6) Witnesses for Examination ("Motion") [77]; the United States' Memorandum in Opposition to Motion ("Opposition") [79]; and Lockheed Martin Corporation's Reply Memorandum in support of Motion ("Reply") [81].[1] Plaintiff Lockheed Martin Corporation ("LMC" or "Plaintiff") moves to compel Defendant United States (the "Government" or "Defendant") "to designate and produce for examination one or more corporate representatives on six of the Topics noted in Lockheed Martin's Notice of Rule 30(b)(6) Deposition." (Motion at 1.)

**I. Background**

The underlying litigation involves a claim by LMC for recovery of response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *See* Complaint [1]. These costs were incurred by LMC when it was ordered to implement a remedial action plan to respond to chemical contamination in soil and groundwater at three

---

[1] This matter was referred to the undersigned for resolution of discovery disputes by Minute Order dated October 31, 2012. The Court convened a telephone status conference on March 22, 2013, at which time counsel indicated no request for a hearing on this Motion.

1

Southern California facilities (collectively, "the Site") where rocket systems were developed and manufactured by Lockheed Propulsion Company.[2] *See* Memorandum Order [38] ruling on Defendant's motion for summary judgment at 1. Plaintiff seeks recovery of costs on grounds that the Government effectively owned and operated the Site and arranged for the disposal of chemical contaminants thereon. (Memorandum Order [38] at 1.) *See also* 42 U.S.C. §9607.

On August 21, 2012, Plaintiff served Defendant with a Notice of Rule 30(b) (6) Deposition in this case. *See* Notice of Rule 30(b) (6) Deposition ('Notice") attached as Exhibit 2 to the Declaration of Michael K. Murphy.[3] On September 19, 2012, the Government responded and objected to the Notice. *See* September 19, 2012 Letter from J. Sullivan to M. Murphy attached as Exhibit 2 to the Murphy Declaration. More specifically, the Government objected and refused to designate a witness on the following six topics at issue in this Motion:

> Topic 1- The Department of Defense's standard policies, procedures and practices, and any changes in those policies, practices, and/or procedures since 1986, with respect to the allowability of environmental costs.
>
> Topic 3- The Department of Defense's application of the Credit Cost Principle with regard to monetary recoveries under CERCLA by its contractors.
>
> Topic 4- The Unites States' position in litigation involving its contractors and their insurers with regard to recovery of environmental remediation costs and the application of the Credit Cost Principle.
>
> Topic 6 – The Burbank Consent Decree, including, but not limited to, negotiation of its terms, operation of the decree, interpretation of its terms, and communications between the signatory parties.
>
> Topic 7 – The United States' policies, opinions, procedures and practices, and any changes in those policies, procedures, and/or practices since 1986, with regard to whether

---

[2] Lockheed Propulsion Company was an operating division of Lockheed Aircraft Corporation, which subsequently became Lockheed Corporation and later merged with the Martin Marietta Corporation to form LMC. (Memorandum Order [38] at 1, n.1.) The Lockheed Propulsion Company was at the Site from 1961 through 1975. State and federal agencies discovered the chemical contamination during the 1990's. (Memorandum Order [38] at 1.)
[3] Michael K. Murphy is counsel of record for LMC.

the Department of Defense-appropriated funds may be used to satisfy the Government's liability as a potentially responsible party under CERCLA.

Topic 29- The United States' knowledge and understanding regarding vapor degreasers and solvent-water separators as a source of contamination at other United States military, civilian, or contractor facilities, including but not limited to, TCE contamination.

(Motion at 2.)

Plaintiff notes that the first five contested topics relate to the United States' claim that "it is inequitable for Lockheed Martin to recover its response costs under CERCLA because it has recovered a portion of those costs already as payments to perform its government contracts." (Motion at 5.)[4] The sixth contested topic relates to the dispute between the parties as to the source of trichloroethylene ("TCE") groundwater and soil contamination at the Redlands Site. Plaintiff filed the instant Motion after the parties "reached an impasse as to these six topics in the Notice." (Motion at 3.)

By way of background, the Government moved for summary judgment on its "double recovery defense," which was described by the Honorable James Robertson [the initial trial court][5] as a two-step argument:

> (1) that collateral estoppel requires the Court, and Lockheed, to accept the determination in Procter v. Lockheed Corp., Case No. 731752 (Cal. Super. Ct. Oct. 22, 2003), that the government is in fact reimbursing Lockheed for the response costs it incurs at the Site through various government contracts; and (2) that, because Lockheed is already being reimbursed by the government, it cannot recover response costs again under CERCLA.

(Memorandum Order [38] at 2.)[6] Judge Robertson rejected the Government's collateral estoppel argument, finding that "[t]he issue decided in Procter concerned the meaning of the language of insurance policies [and] did not define the term 'actual reimbursement' for all time or in all

---

[4] LMG refers to this as the "double-recovery" defense. (Motion at 5.)
[5] The case was reassigned to the Honorable Ellen Segal Huvelle, the current trial court, on June 3, 2010.
[6] Judge Robertson noted that "[t]he question at this stage of the litigation is, How does Lockheed's Billing Settlement with the government-as-client affect its potential CERCLA recovery from the government-as-PRP for response costs associated with the Site? (Memorandum Order [38] at 6.)

contexts, but only established its meaning within the context of a number of insurance contracts." (*Id.* at 9.)

The trial court next considered the Government's claim [incorporated in their second and sixteenth affirmative defenses] that "Lockheed cannot recover costs under CERCLA that it has billed to the government as indirect costs." (*Id.*) The trial court determined that "[t]he contract payment framework and the requirements of the Billing Settlement ensure that Lockheed will not realize a double recovery" because "any CERCLA recovery from the government would lead to a commensurate reduction in the Settled Discontinued Operations Costs pool that Lockheed could charge as indirect costs on its government contracts." (Memorandum Order [38] at 12.) The trial court further distinguished between "[t]he 'government-as-PRP' [potentially responsible party], which would be responsible for paying for Lockheed's CERCLA recovery [and] . . . the 'government-as-client,' which would get that money back from Lockheed." (Memorandum Order [38] at 13.)   Because any award Lockheed would receive would be paid out of the Judgment Fund, "[t]he practical effect . . . would be to reduce the indirect costs Lockheed could pass on to its government clients . . . , effectuating Congress' desire to have CERCLA liability come from the Judgment Fund, not from the budgets of various government agencies." (Memorandum Order [38] at 13-14.)  Furthermore, "[i]f Lockheed is only partially liable for the response costs it is incurring at the Site, it should not have to include all its response costs in the Settled Discontinued Operations Pool." (*Id.* at 14.)

The trial court concluded that "[t]he ruling on the instant motions ensures that Lockheed may recover separately under CERCLA from the government-as-PRP (if the suit ends with a recovery), burdened in its dealings with the government-as-client only by those costs for which it is actually liable." (Memorandum Order [38] at 14.) The trial court denied the Government's

4

motion for summary judgment and found the sixteenth affirmative defense "wholly invalid" while "the second affirmative defense [was] invalid insofar as it assert[ed] that Lockheed [could] not recover costs under CERCLA that it ha[d] billed to the government as indirect costs." (Memorandum Order [38] at 14-15.)[7]

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." In response to the notice, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6).

Parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b) (1). Pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." The showing required pursuant to Rule 26(c) "must be sufficient to overcome the other party's legitimate and important interests in trial preparation." *U.S. v. Kellogg Brown & Root Services, Inc.*, 285 F.R.D. 133, 135 (D.D.C. 2012) (citation omitted).

Rule 30(b) (6) depositions are generally designed to discover facts as opposed to a party's contentions or legal theories. *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361,

---

[7] The Government acknowledges that the "Court rejected the United States' *legal* double recovery argument under section 114(b) of [CERCLA]" but asserts that it can "raise the double recovery argument in any equitable allocation of costs under section 113(f) (1) of CERCLA. . . ." (Opposition at 2) (emphasis in original). *See also* Memorandum Order [43] at 3, ruling on the Government's Motion for reconsideration  ("Some of the arguments the government now raises, including those about equitable consideration under Section 113(f)(1) and burden to taxpayers, may be relevant to allocation determinations that might lie ahead in this litigation.")

362 (S.D.N.Y. 2002).  *See also Nycomed U.S., Inc. v. Glenmark Generics, Ltd.,* No. 08-CV-5023CBA, 2009 WL 3463912, at *1 (E.D.N.Y. Oct. 21, 2009) (motion to compel Rule 30(b)(6) testimony regarding the factual and legal bases for a party's claims and defenses because the court found these "thinly disguised efforts" to obtain information on legal theories.)

### III. Analysis
### A. "Double Recovery" Topics

As a preliminary matter, the Government asserts that "[b]ased on an agreement the parties entered in September 2000, Lockheed is already recovering the vast majority of its environmental remediation costs concerning the Redlands and Beaumont Sites, . . . , from the United States as indirect overhead costs under its government contracts." (Opposition at 8.)  The Government alleges that it is "neither challenging the terms of th[o]se contracts nor disputing that Lockheed can or is recovering environmental costs under its government contracts." (Opposition at 10.)  The Government is instead focused on two issues unrelated to contract interpretation – the amount of environmental costs that have been and are being recovered by LMC and how LMC is accounting for these costs. (Opposition at 11.)

LMC contends that there is a dispute as to the nature of the payments that LMC's government customers make for contract performance and "it appears as though the United States views them as a direct payment for specific environmental costs incurred, *i.e.,* 'recovery,' while Lockheed Martin views them as payments for services rendered or goods provided." (Reply at 4.)  LMC concludes that "allowability and allocability of environmental costs" continue to be contested issues in this case.  (*Id.*).

LMC claims therefore that it is entitled under the Federal Rules:

to discover the *facts* that underlie the Government's legal arguments – including past Government practices regarding the allowability of environmental costs, the Department

of Defense's ("DoD") past application of the so-called Credit Cost Principle, past positions taken by the United States involving contractors and recoveries from insurers for environmental remediation costs, the United States' knowledge regarding the operation of the Burbank CERCLA Consent Decree and the United States' interpretation of its terms, and DoD's past practices regarding the use of DoD-appropriated funds to satisfy the United States' share of environmental remediation costs borne initially by a contractor – and not the legal arguments that the United States may assert based on these facts.

(Motion at 7-8) (footnote omitted). The Government contends that it has already "described its position on these issues in great detail to Lockheed through its prior motions and responses to Lockheed's contention interrogatories on these issues." (Opposition at 3) (string citing documents from the record in this case).

LMC argues that because the first five contested Topics are similar to [deposition] topics set forth in the Government's Notice of Deposition to LMC (*see* Exh. 9, attached to the Declaration of Michael K. Murphy), LMC is entitled to discovery on "*the[se] very same issues and arguments.*" (Motion at 9) (emphasis in original). This Court notes however that the Government's Notice of Deposition to LMC is not at issue in this case.[8]

The Government claims that the five Topics relating to the "double recovery defense" are "irrelevant to this case and improperly seek testimony about legal issues, settlement negotiations concerning an unrelated site, and privileged information [and further,] responding to some of these topics also would impose an unreasonable burden on the United States." (Opposition at 3.)[9] Each of the five "double recovery" topics is addressed below, beginning with Topic 1, relating to the allowability of environmental costs.

---

[8] While LMC references the Government's Notice of Deposition, LMC does not actually compare the topics in its Notice with the topics in the Government's Notice.

[9] The Government further asserts that "Lockheed has not sought any further discovery responses from the United States on its position regarding evidence actually related to the Redlands or Beaumont Sites." (Opposition at 4.)

**Topic 1- Allowability of Environmental Costs**

The Government argues that the allowability of LMC's environmental costs concerning the Beaumont and Redlands Sites under its contracts with the Government is not a disputed issue because it was resolved in a Settlement Agreement dated September 6, 2000 ("Settlement Agreement"). (Opposition at 11-12.)[10] The Government further asserts that producing a witness to respond to LMC's request for testimony about the general allowability of environmental costs under government contracts since 1986 would be "unduly burdensome." (*Id.*) More specifically, the Government notes that '[t]his issue has been the subject of two controversial draft environmental remediation costs principles, a 1993 Congressional hearing, significant media coverage, and numerous articles in legal periodicals." (Opposition at 14) (footnotes and citations therein omitted).

LMC asserts that Topic 1 is relevant to the instant litigation because of the Government's prior assertion that the United States "decided to allow contractors to seek recovery of environmental cleanup costs through government contracts under the general cost principles in the FAR [Federal Acquisition Regulation] based in part on its recognition that both the United States and its contractors could be potentially liable under CERCLA for cleanup costs at defense contractor sites." (Reply at 6) (citing motion for reconsideration [39] at 13).  Plaintiff claims that it needs to explore the basis of this assertion even though the assertion was "already considered and rejected" by Judge Robertson. (Reply at 6.)  In deciding whether to grant a motion to compel, "[c]ourts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C)." *Barnes v. D.C., No. 06-cv-*

---

[10] Pursuant to the Settlement Agreement, the United States will reimburse LMC's costs, including environmental remediation costs, concerning its "discontinued operations" [the Redlands and Beaumont Sites] under LMC's contracts with the United States. (Opposition at 12) (internal citations omitted).

*315 (RCL), 2012 WL 4466693*7 (D.D.C. Sept. 28, 2012) (citations omitted).  In the instant case, Plaintiff's "need" for information pertaining to the allowability of environmental costs is unsupported in that it is founded on an argument asserted by the Government in a motion for reconsideration that was rejected by the then trial court.[11]

The Court finds that LMC's Topic 1 is vague and overly broad and it would be burdensome for the Government to produce witnesses to explain the history of the DoD's allowability of environmental costs since 1986, particularly where the Plaintiff has been unable to clearly demonstrate its need for such information within the context of this case.  LMC's Motion should thus be denied with regard to Topic 1.

### Topics 3&4- Credit Cost Principle

Topics 3 and 4 relate to application of the Credit Cost Principle (also known as the "Credits Clause") and as drafted, these two Topics are not confined in scope to this litigation. The Government argues that its position regarding the application of the Credit Cost Principle to monetary recoveries by contractors from third parties under CERCLA "is [already] well known to Lockheed." (Opposition at 14-15.)[12]  The Government bolsters this statement by referencing litigation that was cited by LMC [where the Government moved to intervene or filed a statement of interest and its position is part of the public record] (Opposition at 15-17)[13] and reiterating its detailed response to LMC's contention Interrogatory No. 28 whereby "the United States already

---

[11] The Government's motion for reconsideration [39] references an Exhibit A, which consists of a compilation of documents relating to allowability of environmental costs. *See also* Opposition Exh. 1 (an article by LMC's former Vice President/Chief Environmental counsel that addresses the history of allowability of contractors' environmental costs under U.S. contracts).

[12] The Government's position is that, "to the extent that a contractor has recovered money from third parties – such as an insurer of other potentially responsible parties . . . –in a CERCLA case in a circumstance governed by the Credit Cost Principle. . . , the contractor should follow 48 C.F.R. §31-201-5 and credit the United States 'either as a cost reduction or by cash refund.'" (Opposition at 15.)

[13] The Government notes that those cases involved government contractors suing third parties and are thus distinguishable from this case where LMC asks the Government to pay for the costs.  (Opposition at 17.)

has described in detail why it believes Lockheed should not be able to recover from the United States a second time . . . ." (Opposition at 17-18) (citing Motion, Exh. 8.)

LMC asserts however that "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." (Reply at 8) (citing *Buehrle v. City of O'Fallon*, No. 10-509, 2011 U.S. Dist. LEXIS 11972, at *8 (E.D. Mo. Fed. 8, 2011) (quotation omitted)). LMC notes that it "disagrees" with the Government's conclusions in response to contention Interrogatory No. 28 and asserts further that "the facts and understanding which underpin these conclusions are highly relevant to the Government's equitable double-recovery arguments." (Reply at 8.) More specifically, these facts at issue include "how credits have worked in the past, DOD's policies relating to crediting, and how Lockheed Martin's government customers and Lockheed Martin have discussed crediting . . . ." (Reply at 9.)

The Court finds persuasive LMC's argument that it requires additional information regarding the Government's response to contention Interrogatory No. 28, and that such information is relevant to this litigation. Accordingly, the Government should produce a Rule 30(b)(6) witness (or witnesses) to respond to a narrowed version of Topics 3 and 4, regarding operation of the Credit Cost Principle *as it relates to the litigation at bar*; i.e., the witness should be prepared to address the facts that underlie the Government's conclusions set forth in response to contention Interrogatory No. 28. LMC's Motion should thus be granted in part and denied in part with regard to Topics 3 and 4.

### Topic 6- Burbank Consent Decree

Topic 6 requests testimony on the Burbank Consent Decree, including negotiation and interpretation of its terms, operation of the decree, and communications between the signatory

parties. (Motion at 2.) The Burbank Consent Decree was negotiated by LMC and the Department of Justice ("DOJ") in *United States v. Lockheed Martin Corp.*, No. 91-4527 (C.D.Cal. Jan. 20, 2000). The Government objects to Topic 6 on grounds that the Burbank Consent Decree "represents the settlement between the parties of a disputed claim in 2000 concerning an unrelated site and is irrelevant to this case." (Opposition at 19.)[14] The Government asserts that all or most of the testimony relating to the Burbank Consent Decree would be subject to the attorney-client or work product privilege and would be inadmissible under Fed. R. Evid. 408.[15] (Opposition at 20.)[16] With regard to information that is not privileged, it is "contained in the Burbank Consent Decree itself and the correspondence among the parties." (*Id.*) Because LMC was a party to the agreement, LMC should have "copies of all correspondence among the parties concerning the negotiation and operation of the Consent Decree" and therefore has no need for discovery on these issues. (*Id.*)

LMC's Motion provides no rationale in support of its purported need for this information, particularly in light of the fact that LMC negotiated and is a party to the Burbank Consent Decree and it should be familiar with the operation of the decree. In its Reply, LMC asserts that the Burbank Consent Decree must be considered with the Discontinued Operations Settlement Agreement "to determine how recoveries from PRPs would be credited to the Discontinued Operations Pool." (Reply at 10.)[17] LMC further asserts that "the Government seeks to present

---

[14] The Burbank Consent Decree was entered on January 20, 2000 in *United States v. Lockheed Martin Corp.*, No. 90-4527. Plaintiff asserts that it "created a system whereby all CERCLA payments by the United States for its environmental liability at Lockheed Martin's Burbank Plant are credited to the Lockheed Martin discontinued operations pool. . . ." (Motion at 8, n.3.)

[15] Rule 408 indicates that offers to settle a claim are inadmissible to prove or disprove the amount or validity of a claim "or to impeach by a prior inconsistent statement or contradiction. . . " Fed. R. Evid. 408(a).

[16] The Government's claims of privilege and evidentiary inadmissibility are not fatal to LMC's request for testimony on Topic 6 because the deponent may claim privilege during the course of the deposition.

[17] The Discontinued Operations Settlement Agreement was negotiated by LMC and the Defense Contract Management Agency. (Reply at 9-10.)

its case with only one of the two documents and without the full context in which the agreements were negotiated and intended to operate." (Reply at 9- 10).[18] Neither of these arguments demonstrates however *why LMC needs a Government Rule 30(b)(6) witnes*s to testify about the Burbank Consent Decree when LMC negotiated and executed the Burbank Consent Decree [and the Discontinued Operations Settlement Agreement]. Information about "negotiation and interpretation of its terms" and "communications between the signatory parties" [for both the Decree and the Settlement Agreement] is already within LMC's possession and control. Nor is information about the operation of the decree [or settlement agreement] solely within the purview of a Government witness. Accordingly, LMC's Motion should be denied with regard to Topic 6.

## Topic 7-Appropriated Funds

In Topic 7, LMC requests testimony regarding policies, practices and procedures since 1986 regarding use of DoD-appropriated funds to satisfy Government liability as a PRP in a CERCLA action. (Motion at 2.) The Government opposes the provision of a witness on Topic 7 on grounds that the testimony sought is legal in nature and furthermore, DoD personnel "lack authority to bind the United States to legal positions in this case." (Opposition at 23-24.)[19] More specifically, "the question of how the United States should pay for judgments under CERCLA is a legal question under federal appropriations law, and indeed, is neither a question the Court needs to or should address nor a factual issue relevant to this case." (Opposition at 24.) *See JP Morgan Chase Bank*, 209 F.R. D. at 362-63 (denying motion to compel seeking to

---

[18] LMC references excerpts of testimony by Louis Becker from the DOJ discussing the joint negotiations regarding the two agreements.

[19] The Government asserts that the position it has taken in this litigation is that "[t]he authority to make decisions on how judgments are paid on behalf of the United States in litigated cases is vested in the Department of Justice, not the DoD." (Opposition at 25); *see* 28 U.S.C. §§516, 519 (discussing authority of DOJ under the Attorney General).

require a Rule 30(b)(6) witness on "facts" when such request was really for attorney work product); *Nycomed U.S. Inc. v. Glenmark Generics, Ltd.*, *supra.*

LMC argues that it needs discovery on facts underlying the Government's assertion that crediting "move[s] money from one federal appropriation (the Judgment Fund) to others (the appropriations of contracting agencies)" because this is "highly relevant" to the double-recovery defense. (Reply at 11-12.)[20] LMC provides no further explanation regarding the purported relevance of this information. Nor does LMC explain how its quest for facts underlying that Government assertion translates into a broad request under Topic 7 for "policies, opinions, procedures and practices . . . since 1986 with regard to whether [DoD]-appropriated funds may be used to satisfy the Government's liability . . . under CERCLA[.]" (Motion at 2.) This Court finds that LMC's Topic 7 is overly broad and seeks legal information as opposed to factual information. Further, Plaintiff's rationale in support of its need for this information is thin at best. Accordingly, the Court finds that Plaintiff's Motion should be denied with regard to Topic 7.

### B. Degreasers Topic
### Topic 29

LMC's Topic 29 asks for information about the Government's "knowledge and understanding regarding vapor degreasers and solvent-water separators as a source of contamination at other United States military, civilian, or contractor facilities, including but not limited to, TCE contamination." (Motion at 2.) LMC alleges that this information is relevant to its argument that "one of the likely sources of TCE released at the Redlands Site was the Government-owned vapor degreaser located in Building 91 at the Site." This Court notes however that, on its face, this Topic is not confined to gathering information about vapor

---

[20]LMC notes that the Government "made this [assertion] in its written discovery responses" (Reply at 12; Motion, Exh. 8.)

degreasers or the Redlands Site or TCE contamination; rather, it asks for information about solvent-water separators as well as vapor degreasers; contamination not limited to TCE contamination; and all military, civilian, or contractor facilities as opposed to the Redlands Site, and further, no time frame is indicated therein. Where the party "cannot identify the outer limits of areas of inquiry noticed, compliant designation is not feasible." *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125 (D.D.C. 2005) (citation omitted).

The Government contends that it has "responded to Lockheed's discovery requests regarding the circumstances and events that *are* relevant to the issue of how TCE contamination occurred at the Redlands and Beaumont Sites." (Opposition at 4) (emphasis in original). *See* Opposition at 27-32 (reiterating Government responses to LMC contention Interrogatories Nos. 3 & 5, discussing solvent water separators and vapor degreasers). The Government contends that a United States Rule 30(b) (6) witness "could provide no additional relevant information about this issue" (Opposition at 34) and providing a witness on Topic 29 would be an "undue burden" and would "provide free expert testimony for Lockheed." (Opposition at 26-27.)

The Government further argues that the testimony requested by LMC about the causes of contamination at other sites "has no bearing on the unique facts and circumstances of this case." (Opposition at 4.) "[N]umerous published environmental cases demonstrate that whether a vapor degreaser causes contamination at a site is based on the unique circumstances of each case." (Opposition at 33.) *See, e.g., New York v. Union Fork & Hoe Co.*, No. 90-CV-688, 1992 WL 107363, at *2 (N.D.N.Y. May 8, 1992) (contamination occurred when employees cleaned the degreaser by rolling it to the edge of the facility and draining the fluid into a pile of scrap on the ground); *U.S. Steel Supply, Inc. v. Alco Standard Corp.*, No. 89-C-20241, 1992 WL 229252, at *7 (N.D. Ill. Sept. 9, 1992) (a sump pump connected to a degreaser failed and allowed solvents

from the degreaser to be discharged to an underground storage and then into the environment); *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1180-82 (9th Cir. 2000) (both parties used the degreaser at the site and admitted to having spilled or dumped solvent on the ground).

LMC disputes the Government's assertion that every contamination stemming from a vapor degreaser is "unique" and asserts that "whether vapor degreasers that malfunction under similar circumstances have been deemed to be sources of contamination is a central and critical fact in dispute in this case." (Reply at 12-13.) LMC claims that it "does not seek either expert or even factual testimony regarding all vapor degreasers or solvent water separators of which the United States may have knowledge." (Reply at 12.) "To the contrary, Lockheed Martin tailored Topic 29 to focus on vapor degreasers or solvent water separators that the Government knows to be sources of contamination specifically at United States military and military contractor sites." (*Id.*).[21]

The Court finds that Topic 29, as drafted, is overly broad and unduly burdensome. The Court notes however that LMC is seeking relevant factual information about vapor degreasers that were deemed to be sources of contamination opposed to expert testimony. The Court thus grants Plaintiff's request but limits it to a list identifying Government-owned sites where vapor degreasers or solvent water separators were deemed to be sources of TCE contamination.[22] Such information shall be provided in the form of an answer to a deposition upon written question and

---

[21] LMC's statement about the tailored scope of Topic 29 is inconsistent with the actual language of Topic 29, which asks about degreasers and separators "as a source of contamination" [in general] and mentions military, civilian, or contractor facilities. *See* Motion at 2.

[22] The Court makes no ruling on the admissibility of such evidence at trial.

it shall be confined to a reasonable period of time, relevant to the allegations in this case.[23]

Accordingly, LMC's Motion with regard to Topic 29 is denied in part and granted in part.

A separate Order accompanies this Memorandum Opinion.


DATE: May 13, 2013                             _____/s/_____
                                               ALAN KAY
                                               UNITED STATES MAGISTRATE JUDGE

---

[23] Topic 29 does not mention a time frame regarding the Government's compliance nor did the Government object to the request on that basis. In terms of compliance, the parties are thus directed to agree upon a reasonable period of time that is relevant to the allegations in this case. In the event that the parties are unable to reach an agreement, they can jointly contact chambers.