IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LOCKHEED MARTIN CORPORATION,**<br><br>    Plaintiff,<br><br>            v.<br><br>**UNITED STATES OF AMERICA,**<br><br>    Defendant. | Civil Action No. 08-1160 (ESH/AK) |

**UNITED STATES' MEMORANDUM ON**
**THE BENEFIT RECEIVED BY LOCKHEED PROPULSION COMPANY**

Lockheed Martin Corporation ("Lockheed") complains that Lockheed Propulsion Company ("LPC") "received little or no benefit" from its work developing and producing "state-of the-art" rocket motors for the United States. Dkt. 124 at 1. Lockheed claims that LPC faced financial uncertainties, operated at a loss, and made other sacrifices to help the United States win the Cold War. Lockheed's memorandum does not give the Court the full story.

Lockheed fails to present the Court with its financial statements in support of its claims that LPC "operated at a loss for the majority of its operational period." One would expect that Lockheed would have these records in its own files and not have to search the SEC. Dkt. 124 at 1, n.1. The United States obtained the annual reports of Lockheed's predecessor and LPC's parent corporation, Lockheed Aircraft Corporation ("LAC"), from public archives. These records provide a more complete picture of the "benefit" of LPC's operations, to LPC and LAC.

LAC's annual reports demonstrate that LPC was an integral part of LAC's strategic plan to provide comprehensive defense contracting services, benefitting LAC. In 1959, LAC invested in Grand Central Rocket Company ("GCR"), the "fourth largest U.S. producer of solid-propellant rocket engines" at the time, to enhance its capabilities as a government contractor and

"to capitalize on many opportunities" in the rocket propulsion field.[1] LAC fully acquired GCR as a subsidiary in 1961, renaming it LPC.[2] LPC became a LAC division in 1962.[3] LPC's 1966 Long Range Master Plan I reiterates that its "primary responsibility [was] to contribute to the success of [LAC]."[4] LAC averaged almost $22 million in annual net earnings during LPC's existence (1961-1975).[5] In 1964, LAC reported that LPC had "signed up $3.3 million in research contracts – nearly a third of its annual business –while investing almost half a million in its own research."[6] In 1966, LAC reported its highest net earnings in history – $58.9 million.[7] In 1971, LAC reported that LPC won contracts totaling "nearly $90 million and cover[ing] work through mid 1973."[8] Whether or not LPC was as profitable as hoped, it clearly contributed to LAC's success.

Even when LAC suffered economic losses, LPC was not cited as the primary cause of those losses. Lockheed's memorandum attempts to blame the SRAM contract, but fails to address many relevant details. First, as discussed in the annual reports from the early 1970s, LPC re-bid on the SRAM production contracts every year. If LPC (or LAC) thought the SRAM contract was a poor business decision, it could have stopped bidding on the contract at any point. Instead, LPC bid on the contract through the mid-1970s. Second, LPC entered into the SRAM subcontract with The Boeing Company ("Boeing"), not the United States, and Boeing controlled

---

[1] Excerpt of Lockheed Annual Report (Dec. 27, 1959) at 15, attached as Exhibit 1.

[2] Excerpt of Lockheed Annual Report (Dec. 31, 1961) at 5, attached as Exhibit 2.

[3] Excerpt of Lockheed Annual Report (Dec. 30, 1962) at 9, attached as Exhibit 3.

[4] LPC Long Range Master Plan I Revision I (Mar. 29, 1966) (Dkt. 124-2 at 14).

[5] Excerpts of Lockheed Annual Reports (1961-1975), attached as Exhibit 4.

[6] Excerpt of Lockheed Annual Report (1964) at 3, attached as Exhibit 5.

[7] LPC Star Rocket (Feb. 2, 1967), Lockheed Earnings Set New High (LMCPRO0314643), attached as Exhibit 6.

[8] Excerpt of Lockheed Annual Report (1971) at 13, attached as Exhibit 7.

LPC's profit as it was negotiated through their subcontract. Third, Lockheed complains that the $20 million SRAM settlement with the United States did not fully compensate LPC for its purported losses. Yet, even after this settlement, LPC continued re-bidding for the SRAM contract annually through the mid-1970s.

Lockheed also complains that LPC lost its proprietary rights to its revolutionary Lockseal technology. Generally, any technology, patents, or developments developed under government R&D contracts belong to the United States.[9] Being a sophisticated company in the government contracts world, Lockheed should have known this. Moreover, Lockheed ignores that LAC's 1975 annual report boasts of another LAC division, Murdock Machine and Engineering, receiving $12 million in sales to make a Lockseal product.[10] Although LPC may not have been the specific division that brought in all of the Lockseal profits, LAC nonetheless benefitted.

Moreover, any losses suffered by LPC do not entirely reflect LPC's contribution to LAC's overall success. For example, if LPC produced goods or services to another LAC division at below-market prices, it would effectively be subsidizing the other LAC divisions. Likewise, LPC presumably shared its technological expertise with other components of LAC.

LPC and LAC were not unique in experiencing economic set-backs in the late 1960s and early 1970s. As Lockheed reported to its shareholders, "[t]he investment community [] labeled the year 1969 a disaster for our industry. Seventeen aerospace stocks fell from 25% to 77% in price from their 1967-69 highs."[11] That year, LAC lost money on the Air Force's C-5A Galaxy,

---

[9] *See* 32 C.F.R. § 9.107-3(a) (1965) ("The Government shall normally acquire…the principal or exclusive rights…to any inventions made in the course of or under a contract where: …(3) The contract is in a field of science or technology in which there has been little significant experience outside of work funded by the Government…"), attached as Exhibit 8.

[10] Excerpt of Lockheed Annual Report (1975) at 44, attached as Exhibit 9.

[11] Excerpt of Lockheed Annual Report (1969) at 3, attached as Exhibit 10.

the Army's AH-56A Cheyenne helicopter program, Navy ship construction, and SRAM,[12] yet LAC was still a prominent contractor. It profited again in early 1971 and received up to $250 million of additional bank loan guarantees from the United States to protect them from filing for bankruptcy.[13] LPC's work inevitably contributed to good will towards LAC and to Lockheed becoming one of the biggest Department of Defense contractors. In fact, LPC's December 1973 "Star Rocket" newsletter bragged that Lockheed was ranked number one among Department of Defense prime contractors for the fifth consecutive year.[14]

In short, both parties benefitted from the work done at the Redlands and Beaumont Sites: the United States benefitted by obtaining rocket motors and Lockheed benefitted economically by solidifying its position as one of the go-to defense contractors, a position it holds today.[15]

---

[12] *Id*. at 5.

[13] LPC Star Rocket (Jun. 6, 1971), Small Profit Reported for First Quarter (LMCPRO0314452), attached as Exhibit 11.

[14] LPC Star Rocket (Dec. 12, 1973), Lockheed Tops Contractors' List (LMCPRO0454376), attached as Exhibit 12.

[15] Lockheed's missile sales to the United States still represent a substantial component of its business. *See* U.S. Ex. 397.0013, Lockheed Martin 2012 Annual Report and Form 10-K Filing ("In 2012, our MFC [Missiles and Fire Control] business segment generated net sales of $7.5 billion, which represented 16% of our total consolidated net sales. MFC's customers include the military services, principally the U.S. Army, and various government agencies of the U.S. and allied countries, as well as commercial and other customers. In 2012, U.S. Government customers accounted for 70% and international customers accounted for 30% of MFC's net sales.")(U.S. Trial Binder Disc, Double Recovery Section).

Dated:  February 23, 2014    Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ *Jennifer E. Powell*
JOHN E. SULLIVAN
JESSICA O'DONNELL, D.C. Bar No. 473166
WM. DARREL JOHNSON
ERICA M. ZILIOLI, D.C. Bar No. 488073
JUSTIN D. HEMINGER, D.C. Bar No. 974809
JENNIFER E. POWELL
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
jennifer.powell@usdoj.gov
Telephone: (202) 514-1978
Facsimile:  (202) 514-8865

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by electronic filing upon all counsel registered with the Court's CM/ECF system on February 23, 2014.

>/s/ *Jennifer E. Powell*
>Jennifer E. Powell